UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

UNITED STATES OF AMERICA

v.                                                              Case No. 8:18-cr-525-T-30TGW

GERLIN RUTILIO IBARGUEN VALENCIA,

    Defendant.
_____/

## DEFENDANT GERLIN IBARGUEN VALENCIA'S SENTENCING MEMORANDUM

On July 28, 2020, the Eleventh Circuit vacated and remanded Mr. Ibarguen Valencia's sentence for the Court's consideration of his entitlement to a minor role reduction. *United States v. Valencia*, 822 Fed.Appx. 942, 951 (11th Cir. 2020). Mr. Ibarguen Valencia was a crew member on a go-fast vessel, and the Court previously denied his request for minor role after finding that he served as the mechanic on board the vessel. *Id*. at 948. The Court scheduled Mr. Ibarguen's resentencing hearing for April 8, 2021, and he offers the following in support of his request for a minor role reduction.

**I. Introduction**

The Government set out the procedural background of the case and the legal framework of USSG §3B1.2 so that will not be repeated here. (doc. 148, pg. 1-6). However, while the Government's memorandum discusses the two prong *DeVaron* analysis, it does not address the clarifications to USSG §3B1.2 through Amendment

1

794.  Relevant to this case, Amendment 794 provides that "[f]or example, a defendant who does not have a proprietary interest in the criminal activity and who is simply being paid to perform certain tasks should be considered for an adjustment under this guideline." U.S.S.G. Supp. App. C, Amend. 794.  And, as Application Note 3(A) to USSG § 3B1.2 states:  "For example, a defendant who is convicted of a drug trafficking offense, whose participation in that offense was limited to transporting or storing drugs and who is accountable under §1B1.3 only for the quantity of drugs the defendant personally transported or stored, may receive an adjustment under this guideline."  Those examples encapsulate Mr. Ibarguen Valencia's role in this offense.  With that backdrop in mind, as discussed below, the *De Varon* factors and the considerations outlined in the commentary to USSG §3B1.2 weigh in favor of granting Mr. Ibarguen Valencia a minor role reduction.[1]

**II.  Measuring the Defendant's Role Against His Relevant Conduct**

The first prong of the *De Varon* analysis asks the Court to evaluate Mr. Ibarguen Valencia's role against his relevant conduct.  *United States v. De Varon*, 175 F.3d 930, 934 (11th Cir. 1999). For purposes of Mr. Ibarguen Valencia's sentence, the weight of drugs was the sole Guideline factor used to determine his sentence other than acceptance of responsibility which has little bearing on his relevant conduct

---

[1] The Court noted at the time of sentencing that it normally gives minor role to mariners, but not to the mechanic.  *Valencia*, 822 Fed.App. at 948.  In addition to the arguments that follow, although Mr. Ibarguen was referred to as the mechanic at his sentencing hearing, he asks the Court to evaluate whether his particular duties on the vessel would qualify him as a mechanic.

since it relates to post-offense conduct. Based on the weight of drugs, Mr. Ibarguen Valencia was at the top of the Drug Quantity Table at a level 38. USSG §2D1.1(c)(1). Therefore, this was not a situation where the Defendant "could argue that [his] relevant conduct was narrow for the purpose of calculating base offense level, but was broad for determining [his] role in the offense" which was a concern of the *De Varon* court. *De Varon*, 175 F.3d at 941. His Guideline range would have been the same if additional drugs were included. Regardless, one does not have to look past the specific drugs involved in this case to find that Mr. Ibarguen Valencia's role was minor.

The Government argues that Mr. Ibarguen Valencia's role should not be evaluated as part of larger conspiracy because he is only responsible for the weight of drugs on his boat. (doc. 148, pg. 8). Yet, limiting the analysis to the drugs on the boast does not mean that everything else regarding those specific drugs is irrelevant. The plan for those drugs did not originate with Mr. Ibarguen Valencia nor was their distribution to be accomplished through Mr. Ibarguen Valencia. Somebody organized a plan to take cocaine from Colombia to be distributed likely in the United States. Mr. Ibarguen Valencia was a link in the distribution chain for those specific drugs, but there were many links that must be considered.

The Government asserts the "object of the conspiracy to which Mr. Ibarguen Valencia pleaded guilty was to transport [cocaine]…across international waters." (doc. 148, pg. 7). However, that is an overly limited description of the object of the conspiracy which is inconsistent with his charge and plea. According to the

3

personalization of elements and factual basis to Mr. Ibarguen's plea, "the object of the unlawful plan was to possess with intent to distribute five (5) kilograms or more…of cocaine." (doc. 51, pg. 2). Also, with respect to Count Two, in order for Mr. Ibarguen Valencia to be guilty of that offense, the Government must prove that "the Defendant intended to distribute the cocaine." (doc. 51, pg. 2). Importantly, neither the Indictment, the elements to which Mr. Ibarguen pleaded, nor the factual basis charges a conspiracy that is limited to the transportation of cocaine. Mr. Ibarguen Valencia's role may have been transportation, but that is not an adequate characterization of the scope of the offense.

In the same way that the Government argues that a defendant cannot narrow their relevant conduct for purposes of guilt and then expand the conspiracy for purposes of sentencing, the Government cannot convict a defendant for a conspiracy to distribute and adding and abetting distribution and then argue at sentencing that their conspiracy was limited to transportation. Possession of cocaine "with intent to transport" is not a violation of the statute. A defendant must intend to distribute which necessarily encompasses at least the plan and ability to distribute. Boating drugs through international waters with no intent other than to transport them does not rise to the level necessary to give the United States jurisdiction over the offense and ultimately for a conviction.

Although the Government claims that Mr. Ibarguen Valencia "is not being held accountable for the actions of any larger enterprise," (doc. 148, pg. 8), his guilt depends on the actions of a larger enterprise. There is no evidence Mr. Ibarguen

Valencia had the plan or the means to distribute anything.  The intent to distribute, which is a necessary element to convict him, is imputed to him because that was the intent of the larger enterprise.  If, as the Government propounds, his intent was limited to transporting drugs in international waters then that intent is different than what he was charged with and to which he pleaded guilty and likely would not support his conviction.

*De Varon* was concerned with a defendant making a minor role claim based on a "far-flung narcotics conspiracy." *De Varon*, 175 F.3d at 947.  Yet, that is not the case here.  This go-fast vessel did not set out based solely on the efforts of the three crewmembers aboard.  Nor were those crewmembers the last stop in the distribution chain for these drugs.  We may not know the specific identities of the people who touched these drugs, but we know that there were people present when the go-fast departed and that there would be people ready to meet the go-fast on arrival.

The only sense in which Mr. Ibarguen Valencia's actual conduct is coextensive with his relevant conduct is the weight of the drugs.  However, weight is not really conduct nor are additional drugs necessary to consider all of the other people involved with just this one boat trip. Weight fails to take into account how Mr. Ibarguen Valencia came to be on the go-fast, who recruited him, paid him, transported him to the go-fast, owned the drugs, packed the drugs, put the drugs on the go-fast, outfitted the go-fast, and would the go-fast to take the drugs to their next stop.  Mr. Ibarguen Valencia's go-fast was not unlike other go-fasts in that the captain had a GPS and satellite phone.  Someone was on the other end of that

5

phone, someone set the course on the GPS, and someone was going to meet them wherever that GPS took them. When Mr. Ibarguen Valencia stepped onto the go-fast, it was loaded and ready to go to its next stop. It had cargo, a course, and a plan and Mr. Ibarguen Valencia had nothing to do with any of that. The weight of the drugs did not plan this trip. People did, and those people are part of the offense conduct. As Mr. Ibarguen Valencia testified his recruiter instructed him: "Look, you don't have any questions. You just follow the orders." Sentencing Tr. pg. 11, ll. 24-25.

In addition, if a conspiracy to transport were something the Government could rely on, then no defendant whose role is to transport could qualify for minor role. That theory would run contrary to Application Note 3(A) to USSG § 3B1.2 which specifically affirms, "a defendant who is convicted of a drug trafficking offense, whose participation in that offense was limited to transporting or storing drugs and who is accountable under §1B1.3 only for the quantity of drugs the defendant personally transported or stored, may receive an adjustment under this guideline."[2]

### III. Comparing the Defendant's Role to that of Other Participants.

The second prong of the *De Varon* analysis asks the Court to measure the defendant's conduct against that of other participants in the criminal scheme

---

[2] Importantly, one of the factors *De Varon* identified as relevant to the minor role analysis in the drug courier context is "role in the distribution." *Palma-Meza*, 685 F. App'x 806, 809 (11th Cir. 2017) (citing *De Varon*, 175 F.3d at 945). Because distribution is the linchpin to the statute, a drug courier's conduct should be evaluated with regard to the distribution scheme.

attributed to the defendant.  *De Varon*, 175 F.3d at 934.  The Government argues that the participants in Mr. Ibarguen Valencia's offense are limited to the two other crew members on the go-fast vessel.  As an initial matter, Count One of the Indictment alleges that Mr. Ibarguen Valencia and his two crewmembers "did knowingly, willfully, and intentionally combine, conspire, and agree with each other *and other persons unknown to the Grand Jury…*" (doc. 1, emphasis added).  Likewise, Count Two charges that Mr. Ibarguen Valencia and his crewmembers "did knowingly and intentionally, while aiding and abetting each other *and other persons unknown to the Grand Jury…*" (doc. 1, emphasis added).  While those other persons are not identified, it was contemplated by the Grand Jury that other people were likely part of this criminal scheme beyond just the crewmembers, and the evidence bears that out.

The Government features two cases in its memorandum, both of which found the district court did not commit clear error by denying a defendant's minor role request in a boat case, *United States v. Palma-Meza*, 685 F. App'x 806 (11th Cir. 2017), and *United States v. Herrera-Villarreal*, 665 F. App'x 762 (11th Cir. 2016).  However, in both of those cases, the defendants requested a minor role reduction based only on their relationship to the other crewmembers on the vessel.  *See Palma-Meza*, 685 F. App'x at 807 (defendant claimed that he was less culpable than his two crew members); *Herrera-Villarreal,* 665 F. App'x at 764–65 (defendant presented no evidence to demonstrate that he was less culpable than the other crewmembers, who were the only other identifiable participants in his relevant conduct).

By contrast, in Mr. Ibarguen Valencia's case the Court denied safety valve to Mr. Ibargen Valencia because he did not adequately identify his recruiter. Safety valve requires a defendant to disclose "all information and evidence the defendant has concerning the offense or offenses that were part of the same course of conduct or of a common scheme or plan…" 18 U.S.C. § 3553(f)(5). The Government asks the Court to limit the scope of participants in his conspiracy to the three crewmembers, but then also claims that he must disclose his recruiter and any others involved in the offense to qualify for safety valve. If, as the Government claims, the only participants in his offense were the crewmembers then he should be awarded safety valve because he had no obligation to disclose anyone beyond the crewmembers. However, if his safety valve obligation extends to others, then those others are part of the "same course of conduct or of a common scheme or plan" and they are relevant to the minor role determination. Under that analysis, he is less culpable than his recruiter and all of the other individuals who recruited his crew members, planned the trip, were present at the launch site, were going to take possession of the drugs from his vessel, and so on. If the expectation is that a defendant in Mr. Ibarguen Valencia's situation must disclose all of those people, if he can identify them, then they are part of a common scheme and relevant to the minor role determination.

Although Mr. Ibarguen Valencia carries the burden to prove his role, it is difficult to place the burden on someone who, because of their lesser role in the offense, does not know the people responsible for this venture or the dozens or more

people involved in moving these drugs from Colombia to their ultimate destination for distribution. Someone recruited Mr. Ibarguen Valencia and his crew members. He does not know whether the same person who recruited him also recruited his codefendants. Two more people picked him up in a boat to transport him to a launch site. Those people concealed their identity with masks so presumably they were more important than Mr. Ibarguen Valencia. There were more people at the launch site. Many were armed. They had the boat packed and ready for the voyage. Because of his lesser role, Mr. Ibarguen Valencia cannot identify the role each of these individuals played. Mr. Ibargeuen Valencia is at an information disadvantage because he does not have access to knowledge his codefendants possess, investigative leads the Government has uncovered, or other relevant discovery regarding the breadth of individuals who were part of this scheme. However, the offense encompasses more than just the three crewmembers. This trip does not happen without many people planning, coordinating, and paying for this venture. Just because Mr. Ibarguen Valencia cannot specifically identify them, does not mean they were not present. In relation to them, Mr. Ibarguen Valencia's role was minor.

### IV. Other Factors to Consider

In addition to the two-prong analysis discussed above, *De Varon* offers a non-exhaustive list of other considerations. In the drug courier context, examples of some relevant factual considerations include: amount of drugs, fair market value of drugs, amount of money to be paid to the courier, equity interest in the drugs, role in planning the criminal scheme, and role in the distribution. *Palma-Meza*, 685 F. App'x

at 809 (citing *De Varon*, 175 F.3d at 945). In addition, Application Note 3(C) of § 3B1.2 offers a similar list of factors that bear on the totality of circumstances.[3]

Mr. Ibarguen Valencia's participation in the offense satisfies nearly all of the non-exhaustive list of factors found in Application Note 3(C) of § 3B1.2 and *DeVaron*. Mr. Ibarguen Valencia had little understanding of the scope and structure of the criminal activity. He only knew enough to allow him to perform the specific tasks he was directed to perform, which was for the most part to keep the engine fueled and to change the filter. He did not recruit anyone to join the activity and was himself recruited by someone else. He was not responsible for obtaining the drugs, nor was he aware of where they came from, who owned them, the amount, or their ultimate destination. He had no idea how these drugs were to reach the United States. To this day he would not know the quantity of drugs without reviewing the discovery provided by the Government. He did not obtain the boat, choose the

---

[3] The non-exhaustive list of factors are:

**(i)** the degree to which the defendant understood the scope and structure of the criminal activity;

**(ii)** the degree to which the defendant participated in planning or organizing the criminal activity;

**(iii)** the degree to which the defendant exercised decision-making authority or influenced the exercise of decision-making authority;

**(iv)** the nature and extent of the defendant's participation in the commission of the criminal activity, including the acts the defendant performed and the responsibility and discretion the defendant had in performing those acts;

**(v)** the degree to which the defendant stood to benefit from the criminal activity.

course, or prepare the boat for the journey. He had no involvement in planning or organizing even the most basic activities associated with the activity. He had no decision-making authority or influence over any other person. In fact, if he had deviated in any way from the instructions given to him, he likely would have been harmed. In his role as a crew member, he had no discretion over how the drugs were to be transported, the route, the individuals he would work with, or any other details associated with moving something from one location to another. He was to be paid an agreed upon wage for being a crew member on the boat and had no proprietary interest in the purchase or sale of any of the drugs.

The only factor that weighs against Mr. Ibarguen Valencia is the weight of the drugs. Like *United States v. Cruickshank*, while the amount of drugs in this case is substantial, "there is nothing in the record to suggest that the amount of drugs was indicative of the magnitude of [the defendant's] participation in the crime -- to the contrary, he did not load the drugs on the vessel, reconstruct the vessel, fuel the vessel, attend the planning meetings for the trip, or otherwise appear to have any role concerning the quantity of drugs." *United States v. Cruickshank*, 837 F.3d 1182, 1195 n. 1 (11th Cir. 2016). The quantity of drugs was not something over which Mr. Ibarguen Valencia had any control and does not distinguish this case from *Cruickshank*. If anything, the weight demonstrates that Mr. Ibarguen Valencia was working for the original source of the drugs or someone close to them. Mr. Ibarguen Valencia's role was minor in comparison to such people.

The Government posits that the quantity of drugs indicates that the cartels placed a large amount of trust, autonomy, and responsibility on him. (doc. 148, pg. 7). Such an assertion intimates that the Government may know for whom Mr. Ibarguen Valencia was working, something Mr. Ibarguen Valencia does not know. If the Government has such information, it is relevant to his sentencing under *Brady* and *Giglio*. Putting that issue aside, other than drawing opinions from the weight of the drugs there is no evidence of what level of trust a cartel placed in Mr. Ibarguen Valencia. A cartel may have placed great trust in another crewmember and little trust in Mr. Ibarguen Valencia. Their trust in them may have been tied to a threat against their family or a promise of further payment and had little to do with the weight of the drugs. Or, they may not have trusted any of them but felt the risk was worth the reward. We simply do not know their thought process.

The Government may offer the street value of the drugs in the United States to support its position, a value which is often quite high, but they do not offer evidence of the cost of production of those drugs to the people who planned these ventures. That number is likely substantially less. Cocaine is a renewable resource, and a lost shipment is replaceable by the next crop. Mr. Ibarguen Valencia's vessel, like most go-fast boats, was just a basic fiberglass or aluminum hull with engines. Beyond the engines, the boat has little value and offers little protection to its operators. Sending someone into the open ocean on one of these vessels is very dangerous. It is certainly not the type of transportation to which one would normally entrust valuable cargo. The cartels are undoubtedly aware that many of these go-fast vessel are

captured and some may never reach their destination due to weather, engine trouble, piracy or some other circumstance. Crewmembers like Mr. Ibarguen Valencia are expendable to the people who organize these voyages. And, because the Guideline calculation depends almost entirely on the weight of drugs in a case like this, couriers at the bottom of the conspiracy, like Mr. Ibarguen Valencia, are punished more severely for the decisions of people with whom they had no contact.

Lastly, even if Mr. Ibarguen Valencia's role could be considered important to the success of the venture, such a factor is not determinative. U.S.S.G. Supp. App. C, Amend. 794. Nearly every job associated with a criminal enterprise, or even a legitimate enterprise, could be considered important to some aspect of the enterprise, otherwise the job would not exist. Someone above Mr. Ibarguen Valencia organized and funded this voyage, obtained the drugs and the boat, mapped the course, loaded the boat, determined a launching and docking spot, and recruited the people to fill the multiple jobs required to accomplish the voyage. Granted, Mr. Ibarguen Valencia's fueling the engine kept the boat moving, but his absence from this crime would not have prevented it from occurring.

### V. Conclusion

For the reasons set forth above and at the sentencing hearing, Mr. Ibargen Valencia respectfully requests the Court grant him an adjustment for minor role pursuant to USSG §3B1.2.

Respectfully submitted,

By: /s/ *P. Matthew Luka*
P. MATTHEW LUKA
Florida Bar No. 0555630
TROMBLEY & HANES. P.A.
707 North Franklin Street
10th Floor
Tampa, Florida 33602
Telephone: (813) 229-7918
Facsimile: (813) 223-5204
mluka@trombleyhaneslaw.com

## CERTIFICATE OF SERVICE

I hereby certify that on April 6, 2021, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to all counsel of record.

/s/ *P. Matthew Luka*
P. MATTHEW LUKA